CORNHILL S. S. CO., Limited, v. WEST INDIA S. S. CO.

(Circuit Court of Appeals, Second Circuit. February 2, 1912.)

No. 170.

SHIPPING (§ 51*)—CHARTER—WAIVER OF PROVISION BY CHARTERER.

A time charter of a steamer to be delivered in a Cuban port required her to have on board coal sufficient for 12 days' steaming, which was to be taken over and paid for by the charterer. On her arrival she had only sufficient for 11½ days' steaming, of which fact the master advised the charterer, but was instructed not to buy more in Cuba. She was kept in Cuban ports for 3 weeks, and then ordered to New York, although the master notified the charterer that she had coal for only 6½ days, and she was compelled to put in to Savannah for more. *Held*, that the requirement for full 12 days' coal in the charter was waived by the charterer, by accepting her notwithstanding the slight deficiency, and in view of its subsequent direction of her movements, without supplying her with sufficient coal to complete her voyage, it was not entitled to deduct the expense of the stopping in Savannah from the charter hire.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 203–210; Dec. Dig. § 51.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Cornhill Steamship Company, Limited, as owner of the steamship Venus, against the West India Steamship Company, for charter hire. Decree for libelant, and respondent appeals. Affirmed.

On appeal by the respondent, the West India Steamship Company, time charterer of the steamship Venus from a final decree directing the West India Company to pay to the libelant the full amount of the charter hire as stated in the charter. The West India Company had paid various sums for coal and for other expenses which it asserts were made necessary by reason of the vessel's deviation to Savannah, due to the exhaustion of her supply of coal. The amount of these items, aggregating $675.38, was deducted by the charterer from the charter hire due the libelant as owner of the Venus.

The opinion of the District Court is as follows: "In my opinion there was no justification for the deduction by the respondent from the charter hire of any of the items making up the amount sued for. Judgment for libelant for $675.38 with interest and costs."

Ferdinand E. M. Bullowa and Ralph J. M. Bullowa, for appellant. Convers & Kirlin and Charles R. Hickox, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The Venus was chartered by her owner, the Cornhill Steamship Company, the libelant, to the West India Steamship Company, the respondent. The charter contained the following:

"On delivering in Cuba, steamer is to have at least sufficient coal on board for 12 days' steaming which charterers are to take over at $3.50 per ton, 2,240 lbs."

In other words, the owner agreed to deliver the steamer at a designated port in Cuba with coal enough on board to enable the boat to steam for 12 days. On paying the charter hire, the West India Company deducted $675.38 from the amount due, giving as a reason for its action, the alleged failure of the owner to have the agreed amount of coal on board when the Venus was delivered to the charterer at Manzanillo on April 1, or 2, 1910.

The charterer justifies its failure to pay this amount upon the theory that the Venus when delivered did not have sufficient coal to carry her to a port north of Hatteras, and that therefore the libelant should pay the damage and expenses occasioned by the deviation to Savannah, including time lost, pilot and harbor fees, the price of extra coal and other expenses.

The principal question is—did the Venus when she reached Manzanillo, the designated port, have coal sufficient to enable her to steam for 12 days? When she reached there she had coal enough for 11½ days and notified the charterer of the slight deficiency, who cabled the master not to get coal there as it was too expensive. We think, in view of the charterer's undoubted right to furnish the additional coal required to make up for the extra half-day that this was a waiver of the terms of the charter for coal enough for 12 days' steaming. When the vessel was delivered she had the requisite amount of coal, except for half a day, and this deficiency was waived by the charterer. If the ship had then started on the northward voyage, she would have had ample coal to reach ports north of Hatteras or even New York. Instead of this, the ship was sent along the coast of Cuba for three weeks, burning coal in steaming, loading and for other purposes. When, then, she was ordered from Jucaro to New York, she had coal on hand for 6½ days only, and this was known to the charterer.

The master of the Venus was fully justified in heeding the charterer's advice not to take coal at Manzanillo, but to wait till he reached a future loading port. At Jucaro, where he was sent, no coal could be obtained. From this port the master of the Venus telegraphed the charterer as follows:

"Venus has only 6½ days' coal, not sufficient to take steamer Norfolk. No coal here."

As the charterer ordered him to New York with knowledge of the situation, we think the master was justified in exercising his judgment that the best course for him to pursue was to stop at Savannah

for coal on his way to New York. We are unable to discover any breach of the charter party by the owner. ·

The deviation to Savannah was occasioned by the action of the charterer in using the coal in Cuba, and sending the Venus north from a Cuban port where it was impossible to procure coal.

The decree should be affirmed with costs, less the amount which the charterer paid for provisions, etc., for the crew at Savannah, amounting to $40.88.